UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
In re

      Robert Edward Hilburger                         Case No. 07-3958 K
                          Debtor
-----------------------------------------------------------------
In re

      Barry S. Gluckstein
      d/b/a PG Vending                            Case No. 08-10866 K
                          Debtor
-----------------------------------------------------------------


<u>OPINION AND ORDER</u>


      The question before the Court in these two cases is nearly identical to that

presented to another court in *In re Johnson*, 402 B.R. 851, 2009 Bankr. LEXIS 497 (N.D. Ind.

2009).  The question is "When keeping the confirmed Chapter 11 case of a natural person open

for the life of the Plan will cause creditors, rather than the Debtor, to bear the cost of U.S.

Trustee quarterly fees, do the statutes require/permit that the case be closed, subject to reopening

without payment of filing fees?"

      In *Hilburger*, the Plan is a "percentage plan," paying creditors what is left after

expenses of the Debtor, and the quarterly fee would be "expenses," directly impacting the

recovery by creditors.

      In *Gluckstein*, the Plan, though a "pot plan," calculated the "pot" in a manner

similar to Hilburger.  Because the Debtor did not anticipate U.S. Trustee opposition to a Motion

to Close the case subject to reopening without fee, the denial of such Motion will either (1) result

in a recalculation of the pot, reducing its size and jeopardizing a key settlement with the major

creditor in the case who settled a substantial dispute with the Debtor premises on a "pot"

equaling 30% of the claims of unsecured creditors, or (2) making a 30% pot unfeasible and

therefore unconfirmable (to all parties' loss).  This case lays bare the fact that the supposed

distinction between percentage plans and pot plans can be a distinction without a difference *vis a*

*vis* what creditors will recover (A more meaningful distinction lies between plans that are

income/expense "driven" and plans that are Chapter 7 test "driven."

      The competing concerns are well-examined by the *Johnson* Court and by the

distinguishable case of *In re Ball*, 2008 Bankr. LEXIS 1532, and will not be reiterated here.[1]

      The fact that the quarterly fees are premised on the concept of "user fees" is

beyond *cavil*.  In a voluntary Chapter 11, the "user" is the debtor and the creditors are, by and

large, involuntary participants.  This suggests that the question stated at the outset should be

answered in the affirmative.

      However, closing the case without prejudice to re-opening without filing fees

does not necessarily alter the U.S. Trustee's statutory duties to monitor the Debtor's performance

of the Plan.

      It has been a hallmark of the U.S. Trustee program that it is a self-funding

program by virtue of the quarterly fees.  Indeed, it is viewed by some as a "profit center" for the

Department of Justice, just as filing fees of various types are viewed as a "profit center" for the

U.S. Courts.  That said, quarterly fees in the minuscule category of "natural persons' Chapter 11

cases" have no possibility of adversely affecting such a hallmark.

      The Court cautions that "gaming the system" will not be tolerated.  In some cases,

the quarterly fees would not substantially injure creditors; the Plan would simply have to run

---

[1]See Also *In re Sheridan*, 391 B.R.287, 2008 Bankr. LEXIS 2194 (E.D.N.C. 2008).

longer, delaying creditors somewhat, but not reducing the "present value" of whatever portion of their claim will be paid. For example, when a plan is "driven" by the Chapter 7 test (e.g. non-exempt equity in realty or other property), the case might remain open unless its early closure is necessary for substantial consummation, such as where a refinancing will fund the plan or make it otherwise feasible, and the lender conditions the refinancing on closing the case.

In the absence of either (1) clear direction from Congress, (2) clear direction from the Judicial Conference of the United States (perhaps limited to a Memorandum of Understanding with the Department of Justice), or (3) instruction from a higher court, this Court is disinclined to interpret the Bankruptcy Code in such a way as to foist the quarterly-fees onto creditors. Both cases shall be closed, subject to reopening without a filing fee.

The Court expressly disclaims any intent to instruct the Department of Justice as to its duties. If it believes that it may assess quarterly fees in a "closed case" - - a case that might never be re-opened for any purpose (such as where the debtor abandons his or her effort to obtain a discharge pursuant to the Plan or completes a full-payment Plan and does not need a discharge), then that is a matter to be governed by Administrative Law, not the Bankruptcy Code..

SO ORDERED.

Dated:         Buffalo, New York
               May 29, 2009


                                              s/Michael J. Kaplan
                                   _____
                                              U.S.B.J.